UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-CR0-00330-JCH-NAB-1 |
| | ) | |
| RICHARD G. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The defendant, Richard Johnson ("Johnson"), was charged with possession with the intent to distribute more than one hundred kilograms of marijuana following a traffic stop on July 24, 2011.

Johnson filed a Motion to Suppress Statements and Evidence on August 26, 2011 [Doc. 39]. He also filed a Motion for Government Agents to Retain Rough Notes [Doc. 41] and a Motion for Disclosure Pursuant to Rules 404 (b) and 609 of the Federal Rules of Evidence. The United States of America filed its Memorandum in Response to the Johnson's Pretrial Motions on September 2, 2011. [Doc. 49]. This Court conducted a hearing on this matter on September 14, 2011.

**MOTION TO SUPPRESS**

Johnson asks this Court to suppress evidence seized from him after the traffic stop. In addition, he seeks to have statements he made to police officers suppressed. He claims the

evidence and statements were taken in contravention of his rights under the Fourth, Fifth and Sixth amendments to the U.S. Constitution.

At the evidentiary hearing, the government presented the testimony of Deputy Tony Hojsik ("Deputy Hojsik") of the St. Charles County Sheriff's Department and Officer Daniel Hoorman ("Officer Hoorman") a St. Peters Police Department employee who is on assignment with the Drug Enforcement Administration (DEA). Neither Johnson, nor the co-defendant in this case, Kendra Flymn testified at the hearing.[1]

Based upon evidence adduced at the hearing, as well as a review of the transcript and briefs of the parties, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Deputy Hojsik testified that he has been a St. Charles County deputy for eleven and a half years, and he has been a canine handler for six years. Before working in St. Charles County, Deputy Hojsik worked in the University City and Beverly Hills, Missouri police departments.

Deputy Hojsik stated that he was on patrol on Interstate 70 in St. Charles County on July 24, 2011 when he noticed a Buick Enclave ("vehicle") exceeding the speed limit. He testified that the vehicle swerved from the left lane to the middle lane and suddenly swerved back. He stated that the vehicle violated Missouri law in exceeding the speed limit and by improper lane usage. Based on those traffic violations, Deputy Hojsik stopped the vehicle. After stopping the

---

[1] Flymn also filed a motion to suppress evidence and statements. The hearing included evidence and testimony from the government regarding both defendants.

vehicle, Deputy Hojsik and Deputy Lineback walked to the passenger side of the vehicle. Two people were in the vehicle. Deputy Hojsik identified Johnson as the driver and Kendra Flymn as the passenger. Deputy Hojsik testified that when the window came down, he was "greeted by a strong odor of marijuana." He testified that he was familiar with the smell of marijuana because of his many years of experience as a police officer and canine handler. He stated that after advising the occupants of the violations, he asked for Johnson's driver's license and the vehicle registration. He said Johnson told him that it was a rental car and he provided the rental agreement. Deputy Hojsik learned that the vehicle had been rented by Flymn in Las Vegas and was due to be returned three days before the traffic stop took place.

  Deputy Hojsik asked Johnson to get out of the vehicle and he met him at the rear of the vehicle. He questioned Johnson about the purpose of the trip. Deputy Hojsik stated that Johnson told him that the car had been rented by his girlfriend in Las Vegas and he was driving back. Johnson identified Flymn as his girlfriend. Deputy Hojsik testified that he then asked for permission to search the Buick and Johnson gave him consent to search. Deputy Hojsik stated that he made no threats or promises to Johnson when he asked for permission to search the vehicle.

  Deputy Hojsik testified that after receiving permission to search the vehicle from Johnson, he approached Flymn. He also asked her about the purpose of the trip and she told him that they had flown to Las Vegas and decided to rent a car to return home because she wanted to see the sights. He stated that he then asked Flymn for permission to search the vehicle. He testified that Flymn gave permission to search the vehicle and she stated that they did not have anything. Deputy Hojsik explained the search he conducted as follows:

3

> "I opened the rear door and decided to start searching back there because I saw a lot of things in the cargo area. I moved a suitcase and I saw duffel bags on the floor, and there was one directly behind her seat. And I pressed on it. It was solid. So that made me suspicious that it could be a marijuana bundle. Unzipped the duffel bag and observed brown contact paper and there was a very strong odor of marijuana associated with that bundle."

Deputy Hojsik stated that the smell coming from the bundle was the same smell that he noticed when the passenger window rolled down after he stopped the vehicle. After he found the marijuana in the duffel bag, Deputy Hojsik placed Flymn under arrest and Deputy Lineback placed Johnson under arrest. After the arrests, Deputy Hojsik advised both Flymn and Johnson of their Miranda rights. After advising Johnson and Flymn of their rights, Deputy Hojsik asked Johnson if he knew about the marijuana in the vehicle. Deputy Hojsik stated that Johnson told him he had no idea about the drugs. Deputy Hojsik testified that he contacted a tow agency to transport the vehicle to Superior Towing. The deputies followed the vehicle to the tow company lot, while a transport car took Johnson and Flymn to jail.

Officer Daniel Hoorman ("Officer Hoorman") testified that he is employed by the St. Peters Police Department and he is currently attached to the Drug Enforcement Administration ("DEA"). He has been a police officer for more than six years. His assignment with the DEA involves conducting large scale drug investigations. Officer Hoorman testified that on July 24, 2011, he was called to Superior Towing. When he arrived he made contact with Deputies Hojsik and Lineback, who were with the vehicle and the items that had been seized from the vehicle. He examined the vehicle and items and took some photographs. He also seized a GPS unit and four cell phones and chargers. After talking with the deputies and examining the vehicle, Officer Hoorman went to the St. Charles jail to interview Johnson and Flymn.

4

With regard to the interview with Johnson, Officer Hoorman stated that he advised Johnson of his Miranda rights and he gave Johnson an Advice of Rights form, which Officer Hoorman identified as Exhibit 4. Johnson placed his initials next to the rights set forth on the form and indicated that he understood his rights. When Officer Hoorman asked Johnson if he would be willing to talk to him, Johnson wrote "depends" on the form. Later, Johnson signed a waiver of his rights. Officer Hoorman then asked Johnson about the marijuana and Johnson denied knowing about it. Officer Hoorman also talked with Johnson about his travels. At some point in the interrogation, Johnson indicated that he did not want Flymn involved and he then described how he was to be paid to pick up a "package" in Tucson and to deliver it to Atlanta. Officer Hoorman stated that he asked Johnson what was in the package, specifically asking, "was it marijuana, cocaine, heroin?" Johnson replied, "it better not be cocaine or heroin."

## CONCLUSIONS OF LAW

In his Motion to Suppress Evidence and Statements, Johnson contends that the search of the vehicle "was conducted without probable cause nor valid consent in violation of the Fourth Amendment of the United States." In addition, Johnson claims the statement taken from him was the fruit of the illegal search and violated his Fifth and Sixth Amendment rights.

In its response, the Government claims the traffic stop was proper because Johnson committed a Missouri traffic violation by exceeding the speed limit. The Government further argues that once the vehicle was stopped, the deputies were justified in temporarily detaining the occupants of the vehicle to investigate the facts necessary to effectuate the purpose of the stop. The Government also maintains that both the driver and the passenger gave valid consent to

search the vehicle. In addition, the Government asserts that Johnson knowingly and voluntarily made statements after waiving his rights under Miranda.

**A. Validity and Scope of the Stop**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized ." U.S. Const. amend IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whern v. United States*, 517 U.S. 806 (1996) (citations omitted).

An officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop is consistent with the Fourth Amendment. *United States v. Peralez*, 526 F.3d 1115,1119 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam)). When an officer makes a routine traffic stop, "the officer is entitled to conduct an investigation reasonably related in scope to the circumstances that initially" prompted the stop. *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004) (quoting *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)). In this case, Deputy Hojsik observed the vehicle speeding, which is a violation of Missouri law. Therefore, there was probable cause to stop the vehicle. *See United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) ("Any traffic stop, however minor, provides probable cause for a traffic stop") (citation omitted).

6

A constitutionally permissible traffic stop can become unlawful "if it is prolonged beyond the time reasonably required to complete" its purpose. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). During a traffic stop, the officer may ask routine questions such as the destination, route, and purpose of the trip, and whether the officer may search the vehicle. *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). Further, the occupants of the vehicle may be detained "while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *Id*. However, "[t]o continue to detain a vehicle's occupants after the initial stop is completed, the officer must have been aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Shafer*, 608 F.3d 1056, 1062 (8th Cir. 2010) (quotation and citation omitted). "'Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience.'" *Id*. (quoting *United States v. Gill*, 513 F.3d 836, 844 (8th Cir. 2008)).

Deputy Hojsik has more than eleven years of experience as a police officer and six years of experience as a canine handler. He testified that he is very familiar with the smell of raw marijuana and he stated that after he pulled the Buick over, he was greeted by a strong odor of marijuana as soon when the passenger window came down. The recognition of the odor of marijuana gave Deputy Hojsik the particularized, objective basis to suspect that a crime was being committed; he was therefore justified in expanding the scope of the traffic stop. *United*

7

*States v. Peltier*, 217 F.3d 608 (8th Cir. 2000) (Smell of marijuana upon stopping vehicle for no license plates gave police probable cause to search vehicle).

**B. Consent to Search Vehicle**

Johnson also claims that the search of the vehicle was conducted without valid consent. A valid consent to search is an exception to the Fourth Amendment warrant requirement of the United States Constitution. *United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1988) (citing, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Frazier*, 560 F.2d 884, 888–89 (8th Cir. 1977), *cert. denied*, 435 U.S. 968 (1978)).

In the context of a warrantless search, it is the prosecution's burden to prove by a preponderance of the evidence that a consent to search was freely and voluntarily given. *See Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. White*, 81 F.3d 775, 780 (8th Cir. 1996); *United States v. Miller*, 20 F.3d 926, 930 (8th Cir. 1994). The consent, however, need not necessarily be knowing and intelligent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 241-244 (1973). One need not be aware of his or her right to consent in order to make the consent voluntary. *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990). A consent is voluntary if it is the product of free choice, the defendant's will is not overborne, and the consent is not given under coercion or duress. *See United States v. Lokoskey*, 462 F.3d 965, 973 (8th Cir. 2006) ("Consent is voluntary if it was the product of an essential free and unconstrained choice by its maker, rather than the product of duress and coercion, express or implied.").

In determining whether the prosecution has met its burden, courts look to both the characteristics of the accused and the details of the environment in which the consent was given. *Chaidez*, 906 F. 2d at 381. Voluntariness is a fact question to be determined from the totality of

8

the circumstances present.  *Schneckloth*, 412 U.S. at 226-227; *United States v. Matlock*, 415 U.S. 164 (1964).  The following characteristics of persons giving consent are relevant when assessing the voluntariness of their consent: (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their Miranda rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system. *Chaidez*, 906 F. 2d at 381 (citations omitted).

In examining the environment in which consent was given, courts should ask whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.  *Id*. (citations omitted).

In regard to the characteristics of the accused, at the time of the search, Johnson was forty-six years old and had graduated from high school.  There is no evidence that he was intoxicated or under the influence of drugs when he gave consent.  Deputy Hojsik did not indicate that he informed Johnson of his right to withhold consent, nor was he advised of his Miranda rights before he consented.  However, even if Deputy Hojsik did not advise Johnson of his Miranda rights, such advice is not required for a valid consent to search.  *United States v. Vera*, 457 F.3d 831, 835 (8th Cir. 2006) *cert*. *denied*, 549 U.S. 1230 (2007) (recognizing there is no requirement that officer inform citizen of right to refuse consent, and no presumption that

consent is invalid where given without explicit notification of right to refuse to consent); *United States v. Montano-Gudino*, 309 F.3d 501, 504 (8th Cir. 2002) (same); *United States v. Payne*, 119 F.3d 637, 643-44 (8th Cir. 1997) ("We have never held that a request to search must be preceded by Miranda warnings or that a lack of Miranda warnings invalidates a consent to search.").

In regard to the details of the environment in which the consent was given, the Court notes that Johnson consented to the search after being questioned briefly. He does not allege that he was threatened, physically intimidated or punished before he consented. In addition, he does not claim he relied on any promises or misrepresentations made by Deputy Hojsik. Johnson was not in custody when he consented and the search took place on the shoulder of a major highway. At no time did Johnson ask that the search be discontinued. *See United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007) (finding consent to search voluntary, though no Miranda warnings given, where officers' request to move truck to safer area with less traffic was not coercive, officers did not make threats or promises or suggest defendant could not refuse consent, detention was for brief period of time, and defendant was silent during search). Based on the totality of the circumstances, the Court concludes that Johnson voluntarily consented to a search of the vehicle. *See Montano-Gudino*, 309 F.3d at 504; *White*, 81 F.3d at 780.

**C. Statements after the Search**

Johnson claims that the statements made after the search were the fruit of the illegal search and seizure and therefore violated his Fifth and Sixth Amendment rights. Johnson therefore argues that the statements he made at the police station to Officer Hoorman should be suppressed.

As discussed above, the Court finds no illegality in the search and seizure conducted by police in this matter.  Therefore, Johnson's argument that his statements were the result of an illegal search and seizure has no merit.  *See United States v. Garreau*, --- F.3d ---, No. 11-1008, 2011 WL 4785993 (8th Cir. Oct. 11, 2011) (Statement sought to be suppressed as fruits of illegal search was not subject to suppression where court determined that the search was lawful).

In *Miranda v. Arizona,* the Supreme Court stated:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.  If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.  Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.  The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

*Miranda v. Arizona*, 384 U.S. 436, 444-445 (1966).

Before he made any statements, Johnson was informed of his Miranda rights.  In addition, he was given an Advice of Rights form and he placed his initials next to each of the enumerated rights and he indicated that he understood his rights.  Johnson also signed a waiver of those rights.  Therefore, the Court concludes that Johnson's statements were made knowingly and voluntarily after having been advised or and waiving his Miranda rights.

## **MOTION TO DISCLOSE**

Johnson requests an order compelling and directing the government to disclose any evidence it intends to introduce regarding prior or subsequent criminal conduct or "bad acts" not

11

charged in the indictment as well as any evidence the government plans to introduce pursuant to Rules 404(b) and 609 of the Rules of Evidence.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Rule 609 provides:

> --For the purpose of attacking the character for truthfulness of a witness,
>
> **(1)** evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to [Rule 403](Rule 403), if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> **(2)** evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

In its response, the government states that it does not possess nor does it intend to pursue introduction of that type of evidence. However, it also states that it will make available to Johnson "any subsequent evidence that may surface regarding this or any other matter in this cause."

Given the government's response, the Motion for Disclosure should be denied as moot.

## **MOTION TO RETAIN ROUGH NOTES**

Johnson requests an order requiring all government law enforcement agents who investigated the charges in this case to retain and preserve all rough notes taken as part of their investigation.  Johnson made this motion so that the Court may determine whether disclosure of those notes is required under *Brady v. Maryland,* 83 S. Ct. 1194 (1963); 18 U.S.C. § 3500, AND Fed.R.Crim.P. 26.2

In its response, the government states that it has voluntarily informed the case agent assigned to this matter to preserve its rough notes. However, the government opposes any motion to obtain those rough notes.

In light of the government's agreement to preserve the rough notes, Johnson's motion to retain rough notes should be granted. Johnson has not requested disclosure of the notes, therefore the issue of disclosure is not before the Court at this time.

Accordingly, it is therefore

**ORDERED** that Johnson's Motion to Disclose Pursuant to Rules 404 (b) and 609 of the Federal Rules of Evidence [Doc. 40] is denied as moot.  It is further

**ORDERED** that Johnson's Motion for Government Agents to Retain Rough Notes [Doc. 41] is granted.  It is further

**RECOMMENDED** that Johnson's Motion to Suppress Evidence and Statements [Doc. 39] be **DENIED.**

The parties are advised that they have fourteen (14) days in which to filed written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1).  Failure to to timely file objections may result in a waiver of the right to appeal questions of fact.

Finally, the trial of this matter is set on **December 12, 2011** at **9:00 a.m.** before the Honorable Jean C. Hamilton, United States District Judge, Courtroom 16-North.

Dated this 14th day of October, 2011.

                                                  /s/ Nannette A. Baker
                                      NANNETTE A. BAKER
                                      UNITED STATES MAGISTRATE JUDGE